IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID JONES,

       Plaintiff,

  v.

WESTERN CONFERENCE OF TEAMSTERS PENSION PLAN, AND DOES 1 THROUGH 10,

       Defendant.
_____/

No. 2:06-cv-2781 JAM DAD

<u>ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT</u>

     Plaintiff David Jones ("Jones") brought this action against Western Conference of Teamsters Pension Plan ("the Plan"), for violation of his rights under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), seeking judicial review of the Plan's denial of monthly pension benefits under his former employers' ERISA-based plan. The parties filed cross-motions for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure. For the reasons set forth below, Jones' motion is GRANTED and the Plan's motion is DENIED.[1]

BACKGROUND

David Jones was employed as a truck driver by Emery Air Freight Corporation from 1984 to 1997. SUF ¶ 2. His employment involved picking up and delivering freight and operating a forklift in a warehouse. Id. Jones was also employed as a driver for Laura Scudders from 1991 to 1996 and at Menlo Worldwide Forwarding as a clerical employee from 1997 to 2004. Id. ¶ 3. Jones' covered employers were in the freight and food distribution industries. Id. ¶ 4.

On May 1, 2004, Jones retired and began receiving benefits from the Plan. Id. ¶ 1. In January 2006, Jones submitted a questionnaire to the Plan indicating that he had been working as a contractor with the United States Postal Service ("USPS") in Penn Valley, California since August 21, 2004. Id. ¶ 5. His job involved sorting and distributing mail, for which he obtained a license to operate a small Class C Jeep. Id. ¶¶ 5-6.

Under the terms of the Plan, non-covered employment after a participant's pension effective date is deemed suspendible if it is in a trade or craft in which the participant worked at any time while covered by the Plan before retirement, in an industry

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 78-230(h).

in which the participant worked at any time while covered by the Plan before retirement, and in any geographic area covered by the Plan.  Id. ¶ 9.  "Industry" for the purposes of the Plan's benefit suspension rules "includes any business activity of a type in which Employees were employed in Covered Employment on the Pensioner's Pension Effective Date."  Id. ¶ 10.  "Trade or craft" for the purposes of the Plan's benefit suspension rules "is (A) a skill or skills, learned during a significant period of training or practice, which is applicable in some occupations in some industry, (B) a skill or skills relating to selling, retailing, managerial, clerical or professional occupations, or (C) supervisory activities relating to a skill or skills described in (A) or (B).  Id. ¶ 11.  Both parties agree that the geographic area covered by the Plan includes the entire State of California.  Id. ¶ 12.

Appendix C.1 of the Plan provides that "[a]n Age Pensioner permanently forfeits his right to receive the Suspendible Portion of his Retirement Benefit payment for any calendar month in which he completes more than the permissible number of Hours of Suspendible Employment, provided that the month in question begins before his 65th birthday.  If the month begins before the Petitioner's 60th birthday or before January 2003, the permissible hours of Suspendible Employment is less than 50; otherwise, the permissible number of Hours of Suspendible

Employment is less than 85.  Id. ¶ 13.  Jones indicated on a questionnaire that he worked 120 hours per month from September to December 2004.  Id. ¶ 5.  Jones is 63 years of age.  Id. ¶ 8.

On April 19, 2006, the Plan's administrative office contacted Jones and informed him that they had found that his post-retirement employment as a mail carrier met the criteria for classification of suspendible employment.  Id. ¶ 17.  The letter requested that Jones reimburse the Plan for benefits received during each calendar month in which he received compensation for work that equaled or exceeded the applicable hours limit.  Id.

In a letter dated May 11, 2006, Jones, through his attorney, appealed the administrative office's decision.  Id. ¶ 18.  Jones asserted that he was not working in the same trade or craft or industry as his pre-retirement employment.  Id.  The Plan's Benefits Review Committee (the "Committee"), considered Jones' appeal at its September 2006 meeting.  Id. ¶ 19.  The Committee denied Jones' appeal.  Id. ¶ 21.  In a letter dated September 7, 2006, the Plan again asked that Jones reimburse a portion of the benefits that he had been paid during the months that he worked more than the allotted hours of suspendible employment.  Id. ¶ 22.  As of November 2006, the Plan has suspended payment of a portion of Jones' benefits.  Id. ¶ 23.

On December 8, 2006, Jones filed a Complaint seeking past, present, and future pension benefits.  Docket at 1.

OPINION

Rule 56 permits a court to grant summary judgment when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  In this case, neither party contends that there are any genuine issues of material fact.  See Pl. Opp. to Def. Mot. for Summary Judgment 3.  Therefore, the Court need only apply the relevant substantive law.  See Arakaki v. Hawaii, 314 F.3d 1091, 1094 (9th Cir. 2002).

ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary.  See 29 U.S.C. § 1132(a)(1)(B).  It also creates federal court jurisdiction to hear such a claim.  See 29 U.S.C. § 1132(e).  Review of a decision to deny benefits is *de novo* review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits; if the plan does grant such discretionary authority, the decision is reviewed for abuse of discretion.  Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008). Here, the relevant language of the Plan provides:

> The Trustees have the exclusive authority to interpret the Plan and any rules and procedures established under the

>   Plan and to determine the rights of claimants under the
>   Plan and under those rules and procedures.
>   …
>   The decisions of the Trustees in all matters pertaining to
>   the administration of the Plan are final and binding on all
>   interested persons.

SUF ¶¶ 14-15.  Because the Trustees are vested with final and binding authority to determine eligibility for benefits, the Court must review the Plans denial of Jones' pension benefits under an abuse of discretion standard.

Jones alleges that the Plan is operating under a conflict of interest which should be considered in determining whether there was an abuse of discretion.  See Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir. 2004) ("[W]here the benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion.")(internal citations omitted). The Ninth Circuit has recognized that there is an inherent conflict of interest "when a plan administrator both administers the plan and funds it."  Saffon, 522 F.3d at 868.  As Defendant notes, however, the Plan is funded by contributions from hundreds of employers based on negotiated collective bargaining agreements.  See Def. Rep. Re Def. Mot. for Summary Judgment 3. Furthermore, the plan is administered by a Taft-Hartley Act trust consisting of an equal number of union and employer

6

trustees.  Ex. E to Sander Decl. at 38.  The union and employer trustees have to agree for the Committee to act.  See 29 U.S.C. § 186(c)(5)(B).  Because the Plan administrators consist of both union and employer trustees, and because they were separate from the Plan's numerous funding sources, Plaintiff has not demonstrated a conflict of interest.  See <u>Jones v. Laborers Health & Welfare Trust Fund</u>, 906 F.2d 480, 481 (9th Cir. 1990) ("Because the Board of Trustees consists of both management and union employees, there is no conflict of interest to justify less deferential review.").

   The Court must therefore consider whether the Plan abused its discretion in denying Jones certain pension benefits by classifying his employment with the USPS as suspendible.  To be suspendible, a participant's employment must both be in a trade or craft and be in an industry in which the participant worked at any time while covered by the Plan before retirement.  The Plan argues that USPS is in the commercial freight industry.  For the purposes of classifying employment as suspendible, "Industry" is defined as "any business activity of a type in which Employees were employed in Covered Employment on the Pensioner's Pension Effective Date."  The Committee defined the freight industry as "products or materials...being transported for a third party for hire."  Ex. B to Sander Decl.

The Court finds that the Plan's failure to specifically consider the business activities of Jones' former and current employers was unreasonable.  The Committee admittedly refused to consider the nature of the products or materials being transported or the method of transportation.  Id.  The Committee also failed to consider the fact that freight made up less than 4% of USPS profits for fiscal year 2005.  Ex. A to Sander Decl. at WCT 000004.  The only justification upon which the Plan relies for its overbroad definition of the freight industry is that it is consistent with its previous decision in the Sullivan case, in which a party who had worked as a truck driver for a private company sought to work as a truck driver, not a mail carrier, for USPS.  See Ex. A to Sander Decl. at WCT 000029-31. Similarly, Defendants reliance on the Sixth Circuit's decision in Whisman v. Robbins, 55 F.3d 1140 (6th Cir. 1995) is inapposite.  In Whisman, the Sixth Circuit found that the USPS was in the same industry as United Parcel Service, a private mail delivery company.  However, in making its determination, the Sixth Circuit looked specifically to the activities performed by each organization to determine that they were in the same industry.  Id. at 1149 (noting that both organizations engage in overnight delivery of letters and delivery of parcels).  Here, the Plan unreasonably failed to compare the

specific business activities of USPS with those of Jones' previous employers.

Even assuming that Jones' previous employers and USPS are in the same industry, however, the Plan was also unreasonable in determining that Jones engaged in the same trade or craft as in his previous employment.  For the purpose of determining whether employment is suspendible, one of the definitions of "trade or craft" is "a skill or skills, learned during a significant period of training or practice, which is applicable in some occupations in some industry."  Jones used different skills in his former and current employment.  In his previous employment, Jones worked as a truck driver and forklift operator, for which he obtained a Class B Commercial License with a HAZMAT endorsement.  Jones delivered heavy freight for commercial customers.  In his current employment, Jones sorts and delivers mail and operates a small Class C Jeep with a steering wheel on the right.  Furthermore, Jones' new employment required nine months of training, suggesting that the skills he obtained in his previous employment were not transferrable.  See 29 CFR 2530.203-3(c)(2)(ii)("Factors which may be examined include whether there is a customary and substantial period of practical, on-the-job training or a period of related supplementary instruction.").  The Plan's determination that mail delivery on a rural mail route involved the same trade or

9

craft as operating a commercial freight truck was unreasonable and an abuse of discretion.  Accordingly, the Plan abused its discretion by unreasonably determining that Jones' current employment as a mail carrier was in the same industry and trade or craft as his former employment as a commercial truck driver.

ORDER

For the reasons set forth above, Jones' Motion for Summary Judgment is GRANTED.  The Plan is directed to immediate reinstate Jones' monthly disability benefits retroactive to November 2006, with interest.  Jones may also be entitled to an award of reasonable attorneys' fees and costs.  See 29 U.S.C. § 1132(g).  The Court will entertain a separate motion for attorneys' fees and costs.

IT IS SO ORDERED.

Dated: August 20, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE